IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA



FILED

JUL 1 3 2015

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | |
| Halil FALYALI, | CASE. NO. 1:15MJ371 |
| Husnu FALYALI, | UNDER SEAL |
| and | |
| Ozgur DEMIR, | |
|      Defendants. | |

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Timothy D. McGrath, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    This affidavit is made in support of a criminal complaint charging Halil FALYALI, Husnu FALYALI and Ozgur DEMIR with conspiracy to transport, transmit, or transfer monetary instruments or funds from a place in the United States to or through a place outside of the United States, knowing that the funds involved in the transfer represented the proceeds of some form of unlawful activity and knowing that such transfer was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(2) and (h).

2.      I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been employed by the DEA since March of 1995.  As a Special Agent with the DEA, I have received specialized training in the ways, manner, and means used by those who unlawfully distribute controlled substances. During my tenure as a Special Agent of the DEA, I have participated in investigations involving individuals and organizations engaged in the unlawful distribution of heroin, cocaine, PCP, and other controlled substances.  I am currently assigned to the DEA's Bi-Lateral Investigative Group primarily investigating drug traffickers, weapons traffickers and money launderers based in Europe.  As a result of my training and experience, as well as knowledge I have obtained from other senior investigators, I am familiar with the methods used by individuals and organizations engaged in unlawful drug trafficking and money laundering.

3.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations and make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

## PURPOSE OF AFFIDAVIT

4.      Based on evidence developed during the course of the investigation and outlined in part below, I submit that the facts set forth in this affidavit establish that there is probable cause to believe that Halil FALYALI, Husnu FALYALI and Ozgur DEMIR and others are part of an on-going criminal conspiracy to transport heroin from Cyprus and Turkey to England and launder the proceeds of those drug sales, as well as the proceeds of drug sales in other parts of the world, including the United States.

5.     Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every detail known to the government. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. The information contained in this affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. Throughout the affidavit one Confidential Source (CS) will be referenced and regardless of gender, the CS will be referred in the masculine form.

## PROBABLE CAUSE

6.     Probable cause for the aforementioned defendants is based on the historical debriefings of Sources of Information, law enforcement undercover phone calls and meetings with members of the defendants' criminal organization, and undercover operations, during which the defendants and other members of their criminal organization engaged in financial transactions with purported drug related proceeds in order to conceal the nature, ownership and control of those funds.

## DEFENDANTS' DRUG-TRAFFICKING ORGANIZATION

7.     DEA has debriefed numerous Sources of Information (SOIs) about Halil FALYALI, Husnu FALYALI, and Ozgur DEMIR. The Sources indicated that the FALYALIs run a large-scale drug and weapons trafficking organization in the Turkish Region of Northern Cyprus. The FALYALIs are known to be associated with Turkish organized crime. The information that these SOIs provided is consistent with DEA's independent investigation in this case.

3

8.      According to another SOI, the defendants and other members of their criminal organization transfer heroin to associates in the United Kingdom from Cyprus via commercial cargo (air freight) with various "cover loads" of fruits and vegetables. Each of these shipments consist of multiple kilograms of heroin. On or about November 6, 2012, law enforcement officials in the United Kingdom seized 18 kilograms of heroin. DEMIR has been charged in the United Kingdom in connection with that seizure and is currently a fugitive.

## UNDERCOVER MONEY LAUDERING OPERATION

9.      On or between May 7 and May 9, 2011, CS-1 met Halil FALYALI and Husnu FALYALI in Cyprus. During the meetings, HALIL FALYALI told CS-1 that he purchased a "custom" boat from the United States to transport drugs from Turkey to Cyprus. Halil FALYALI added that under normal sea conditions the boat can transport 500 kilograms of heroin and travel from Mersin, Turkey to Famagusta, Cyprus in 40 minutes.

10.      In or around May 2012, CS-1 negotiated with Halil FALYALI to launder $50,000 in U.S. currency. CS-1 would deliver this currency to Halil FAYLALI in London, England, and Halil FALYALI would launder it and return it to CS-1 in Amman, Jordan by way of the FALYALI's bank account located in the Turkish Republic of North Cyprus. CS-1 told Halil FALYALI the funds were proceeds from the sale of cocaine in the United States.

11.      Halil FALYALI told CS-1 to meet with his London-based associate, DEMIR, who would retrieve the cash and initiate the transfer of the money to Jordon. During negotiations, CS-1 told DEMIR that he was able to have a courier body carry $50,000 from the U.S. to London. CS-1 told DEMIR that he needed assistance in "laundering" the money to Amman, Jordon.

4

12.    On or about May 23, 2012, CS-1 met DEMIR in London, England and transferred $50,000 in United States currency to DEMIR.

13.    On or between May 23 and June 12, 2012, CS-1 conducted numerous recorded phone calls with Halil FALYALI. During these recorded phone calls, Halil FALYALI detailed various money laundering schemes Halil FALYALI attempted to implement so that CS-1 could retrieve the funds in Jordon without detection by law enforcement.

14.    On June 12, 2012, Halil FALYALI called CS-1 and stated that Husnu FALYALI had transferred $44,750 in U.S. currency from their bank account (Husnu and Halil FALYALI) to a DEA undercover bank account. The FALYALIs took out an agreed upon 10% commission. Based on my training and experience, this type of commission is a typical fee charged by those who launder drug proceeds.

15.    Following the first transfer of currency, CS-1 and Halil FALYALI negotiated a second transfer of $100,000 from the United States to a DEA undercover bank account in Sofia, Bulgaria. Halil FALYALI agreed and stated that he would take a 7% commission and a one-time payment of 10,000 Euros, which he would use to bribe his bank manager. CS-1 agreed and further requested that Halil FALYALI provide a false invoice for a shipment of oil so that the money deposited would appear to be a legitimate business transaction.

16.    On or about July 9, 2012, investigators sent $100,000 via wire transfer from a DEA undercover account in Washington, DC, held in the name of a company based in the Eastern District of Virginia, to FALYALI's account, held in the name of Tener Isletmecilik LTD, at the Turkiye Is Bank in the Turkish Republic of Northern Cyprus.

17.     On or about July 18, 2012, Halil FALYALI confirmed that he took $7,000 in U.S. currency as a commission, and that his bank manager took $13,350 (10,000 Euro equivalent at the time) and associated bank fees. On or about July 18, 2012, Halil FALYALI confirmed the transfer of $79,400 in U.S. currency to a DEA undercover bank account in Sofia, Bulgaria.

18.     On or about July 23, 2012, $79,315 was received in the DEA undercover bank account in Sofia, Bulgaria.

19.     On or about September 2, 2012, CS-1 and a DEA undercover agent met Halil and Husnu FALYALI and others in Larnaca, Cyprus. During the meeting, the FALYALI's indicated they had an urgent need for cocaine in the United Kingdom, and prices and quantities were discussed, as well as the availability of weapons.

20.     In or about September 2012, Halil FALYALI and CS-1 negotiated another transaction in which CS-1 would transfer $150,000, which Halil FALYALI would launder and return to CS-1.

21.     On or about September 26, 2012, DEA wire transferred $150,000 from the same undercover referenced in paragraph 16, above, to Halil FALYALI. On September 27, 2012, Halil FALYALI confirmed receipt of the money in his bank account. On September 28, 2012, Halil FALYALI confirmed he completed a wire transfer to the DEA undercover bank account in Sofia, Bulgaria in the amount of $128,000. Halil FALYALI utilized the same bank account as the second transaction, detailed in paragraph 17, above.

22.     During the third transaction, Halil FALYALI told CS-1 that Halil FALYALI had to charge CS-1 a higher percentage to cover the cost of Halil FALYALI having to pay a year-end

6

tax on all his business invoices from his company, Tener Isletmecilik LTD. By paying tax on the transaction, it would appear to be a legitimate business transaction, instead of a criminal money laundering transaction.

## CONCLUSION

23.     On the basis of the facts and circumstances stated above, your affiant submits there is probable cause to believe that Halil FALYALI, Husnu FALYALI and Ozgur DEMIR and others have engaged in a conspiracy to transport, transmit, or transfer monetary instruments or funds from the United States, in violation of Title 18 United States Code, Section 1956(a)(2).

Your affiant affirms under penalty of perjury that the facts and circumstances outlined in this affidavit are true and accurate to the best of his knowledge and belief.

_Timothy D. McGrath_

Timothy D. McGrath, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on _July 13_, 2015

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge
The Honorable Michael S. Nachmanoff
United States Magistrate Judge